AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

JUL 01 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One (1) Motorola Moto G Play<br>IMEI: 354138071822118<br>S/N: ZY223JKQ5K | )<br>)<br>)<br>)   Case No.<br>)<br>)   **19MJ2745**<br>) |

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 952, 960, 963 | Importation of Cocaine, Conspiracy to Import Cocaine |

The application is based on these facts:

See Attached Affidavit incorporated herein

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jennifer Arellano, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: JUNE 12, 2019

*Judge's signature*

City and state: San Diego, California

Andrew G. Schopler, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Jennifer Arellano, a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), having been duly sworn, depose and state as follows:

## INTRODUCTION

1.     This affidavit supports an application for a warrant to search the following electronic device, as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960 and 963, as more particularly described in Attachment B:

> One (1) Motorola Moto G Play
> IMEI: 354138071822118
> S/N:   ZY223JKQ5K
> (hereinafter the **Target Device**).

This search supports an investigation and prosecution of Felix RUBIO Guzman ("RUBIO") for one or more of the crimes mentioned above.  A factual explanation supporting probable cause follows.

2.     Officers with United States Customs and Border Protection ("CBP") seized the **Target Device** on April 4, 2019, from Felix RUBIO Guzman at the time he was arrested at the San Ysidro, California Port of Entry ("San Ysidro POE") with approximately 12.14 kilograms (26.7 pounds) of cocaine hidden in his blue Chevrolet Equinox bearing Mexican license plate AKT2492.  The **Target Device** is currently in the possession of the Homeland Security Investigations, San Diego Metro Vault, located at 880 Front Street, Suite 3200, San Diego, California 92101.

3.     Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4.     Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation.  Instead, it contains only those facts believed to be necessary to establish probable cause for the requested warrant. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other HSI Special Agents, and my personal observations and knowledge.  When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## EXPERIENCE AND TRAINING

5.     I have been a Special Agent with HSI since August 2004.  I am currently assigned to the HSI San Diego field office in San Diego, California.  My job duties include investigating the smuggling of controlled substances into the United States. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and to enforce provisions of the Federal Controlled Substance Act, pursuant to Title 21 of the United States Code.  Prior to being hired as a special agent, I obtained a Bachelor's degree in Criminal Justice.  I was previously employed by the United States Coast Guard for approximately four and a half years.  While employed with the Coast Guard, I received extensive training in Federal law enforcement techniques and participated in counter-drug and counter-alien trafficking activities.

6.     To become an HSI Special Agent, I attended the ICE Academy and graduated in December of 2004.  At the Academy, I was trained in all aspects of conducting criminal investigations. This training included methods of investigation related to international and domestic drug and alien trafficking, money laundering, and the seizure and forfeiture of assets relating to these investigations.  I have participated in training programs related to controlled substances, including but not limited to marijuana, cocaine, methamphetamine,

and heroin. I have also received training in the methods used by narcotics traffickers to import, distribute, package and conceal controlled substances.

7. During my law enforcement career, I have initiated, conducted and participated in numerous investigations related to drug trafficking, alien smuggling, money laundering and fraud. These investigations have involved: interviewing witnesses, confidential sources, and defendants; conducting surveillance; applying for and executing search, arrest, and seizure warrants; seizing drugs, contraband, and illegal proceeds; analyzing documents and records related to criminal activities; and assisting in obtaining and monitoring pen registers. Through these investigations, and through my interaction with other experienced investigators, I have become very familiar with the methods employed by large drug trafficking organizations, which includes the use of cellular and digital telephones and other electronic devices used in the normal course of their illicit activities.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a.    Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    b.    Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c.    Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d.    Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal

cargo;

e.      Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

9.      Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of cellular/mobile telephones sometimes yields evidence:

a.      tending to indicate efforts to import cocaine, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute cocaine or federally controlled substances within the United States;

b.      tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute cocaine or federally controlled substances within the United States;

c.   tending to identify coconspirators, criminal associates, or others involved in importation of cocaine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute cocaine or federally controlled substances within the United States;

d.   tending to identify travel to or presence at locations involved in the importation of cocaine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute cocaine or federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

10.   Subscriber Identity Module ("SIM") Cards also known as subscriber identity modules are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11.   Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones. Additionally, based on

my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

## FACTS SUPPORTING PROBABLE CAUSE

12.   According to a report prepared by Customs and Border Protection Officer (CBPO) D. Morton, on April 4, 2019 at approximately 5:20 pm, RUBIO applied for admission into the United States from Mexico at the San Ysidro POE. RUBIO was the driver of a blue Chevrolet Equinox bearing Baja California, MX plate # AKT2492 (the "Vehicle"). RUBIO's wife, Maria Isabel MUNOZ Angulo, (DOB: 01/12/1982) and their three children were in the car. RUBIO, MUNOZ Angulo, and the three children presented DSP-150 Border Crossing cards. RUBIO stated that they were going to San Diego, CA. CBPO Morton asked RUBIO if he had anything to declare. RUBIO gave two negative Customs declarations. CBPO Morton referred RUBIO to the secondary lot for further inspection.

13.   According to his report, CBPO B. Joseph assisted with the inspection of the Vehicle at approximately 5:45 p.m. CBPO Joseph noticed a heavy layer of dirt throughout the vehicle. When CBPO Joseph inspected the glove box, he noticed that it looked like it was wiped clean. CBPO Joseph noticed that there was tampering with the bolts near the glove box. CBPO Joseph looked through a small hole in the glove box and was able to see non-factory felt fabric in the space behind the glove box. CBPO Joseph reached under the glove box and felt a hard package within a plastic bag.

14.   According to her report, CBPO K. Golden was assigned to conduct the 7-point inspection of the Vehicle. CBPO Golden discovered a black plastic bag which was accessible through the engine compartment and the glove box. At 8:00 pm, CBPO Golden

removed a total of 11 packages from the plastic bag which was removed from the area behind the glove box. CBPO Golden observed that six of the packages were labeled "Corazon", two were labeled "flor", and three were labeled "jefe". CBPO Golden chose a random package and tested the white powdery substance found inside. The substance tested positive for characteristics of cocaine. CBPO Golden contacted Sector Communications. RUBIO was arrested for violations of Title 21 USC §§ 952 and 960, Importation of a Controlled Substance, and was booked into the Metropolitan Correctional Center in San Diego, CA.

15.    At approximately 9:00 p.m. on April 4, 2019, I was notified of the drug seizure and responded to the San Ysidro POE where the **Target Device** was provided to me. I made contact with RUBIO and advised him of his Miranda rights, which he waived. During the post-arrest interview, RUBIO identified the **Target Device** as belonging to him. RUBIO denied knowledge of the drugs found in his vehicle. In summary, he stated he dropped the Vehicle off at a mechanic shop on the Saturday before his arrest because the Vehicle was overheating. He stated he did not know the name of the shop, but stated the mechanic's name is Sergio and showed me Sergio's contact information on his phone, which was listed as "Payaso Mecanico." RUBIO further stated the car continued to overheat and was not fixed. RUBIO stated he works at Pemex in Ensenada, Mexico and makes good money. RUBIO further stated that his wife had no knowledge of the narcotics in the Vehicle; however, RUBIO also stated that if his wife was released, he would give me information about the narcotics found in the Vehicle. No promises were made regarding release of RUBIO's wife and the interview was concluded.

16.    At approximately 2:00 a.m. on April 5, 2019, RUBIO requested to speak with agents again. I reminded RUBIO of his Miranda rights and he agreed to give further statements. RUBIO stated that he had a friend named Mike NUEVO who is friends with the mechanic who worked on the Vehicle. RUBIO stated that NUEVO gave him a contact number for someone who could help RUBIO in the United States if the Vehicle were to

break down.  RUBIO showed me the contact information in his phone for Miguel Angel MENDEZ Rueda.  RUBIO stated he thought that NUEVO and MENDEZ must have been the persons who involved him in narcotics smuggling.  RUBIO continued to deny knowledge of the narcotics in the Vehicle.  Also, at this time, RUBIO admitted that he had recently been suspended without pay from his job.

17.    On April 5, 2019, the Honorable Andrew G. Schopler, United States Magistrate Judge, signed a criminal complaint charging RUBIO with importation of a controlled substance, in violation of Title 21, United States Code, Sections 952 and 960.

18.    Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of RUBIO, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**.  For the reasons set forth above, I request permission to search the **Target Device** for items listed in Attachment B for the time period from January 4, 2019 up to and including April 5, 2019.

## METHODOLOGY

19.    It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device.  Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device

may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20.     Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## CONCLUSION

22.     Based on all of the facts and circumstances described above, there is probable cause to conclude that Felix RUBIO Guzman used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952, 960, & 963.

23.     Because the **Target Device** was promptly seized during the investigation of RUBIO's  trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by RUBIO continues to exist on the **Target Device**.  As stated above, I believe that the appropriate date range for this search is from January 4, 2019 to April 5, 2019.

24.     THEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and to seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____

Jennifer Arellano
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this  12th  day of June, 2019.

_____

The Honorable Andrew G. Schopler
United States Magistrate Judge

# **ATTACHMENT A**

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> One (1) Motorola Moto G Play
> IMEI: 354138071822118
> S/N:   ZY223JKQ5K
> **(Target Device)**

**Target Device** is currently in the possession of Homeland Security Investigations, San Diego Metro Vault, located at 880 Front Street, Suite 3200, San Diego, California 92101.




## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below.  The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 4, 2019, up to and including April 5, 2019:

a.  tending to indicate efforts to import cocaine or some other federally controlled substance from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States;

e.  tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 952, 960, & 963, Importation of a Controlled Substance and Conspiracy to Import a Controlled Substance.